CLARKE B. HOLLAND (SBN 76805)
cholland@plawp.com
DAVID B.A. DEMO (SBN 153997)
ddemo@plawp.com
ANDREW P. COLLIER (SBN 232647)
acollier@plawp.com
PACIFIC LAW PARTNERS, LLP
2000 Powell Street, Ste. 950
Emeryville, CA  94608
Tel:  (510) 841-7777
Fax:  (510) 841-7776

R. LIND STAPLEY (Appearance Pro Hac Vice)
stapley@sohalang.com
Soha & Lang, P.S.
1325 Fourth Ave., Ste 2000
Seattle, WA  98101-2570
(206) 624-1800
(206) 624-3583 (fax)

Attorneys for Defendant
OREGON MUTUAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nari Suda LLC, a Delaware Corporation, dba Nari, and Pakin Corporation, a California Corporation, dba Kin Khao, on behalf of themselves and all other similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>Oregon Mutual Insurance Company, an Oregon Corporation,<br><br>                    Defendants. | Case No.: 4:20-cv-3057-JSW<br><br>**DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>**[Fed. R. Civ. Pro. 12(b)(6)]**<br><br>Date:         August 7, 2020<br>Time:        9:00 a.m.<br>Location:   1301 Clay Street<br>                   Oakland, CA 94612<br>                   Courtroom 5, 2nd Floor |

*Pacific Law Partners, LLP*
*2000 Powell Street, Ste. 950*
*Emeryville, CA 94608*
*(510) 841-7777 - Facsimile (510) 841-7776*

1

## TABLE OF CONTENTS

2

Page

3    TABLE OF AUTHORITIES ................................................................. 3

4    MOTION TO DISMISS ...................................................................... 5

5    SUMMARY OF ARGUMENT ............................................................ 5

6    POINTS AND AUTHORITIES ........................................................... 6

7    I.    RULE 12(b)(6) ......................................................................... 6

8    II.   MATERIAL ALLEGATIONS .................................................. 6

9    III.  RELEVANT POLICY PROVISIONS ...................................... 9

10   IV.  THE CLAIMS ARE NOT COVERED ..................................... 11

11        A.   Plaintiffs' Allegations Show There Is No Coverage ......................................... 11

12        B.   Claims Do Not Fall Within The "Business Income" Insuring Agreement ........ 12

13             *1. No Direct Physical Loss Of Or Damage To Property At The Restaurants* .. 12

14             *2. No Physical Change In Condition Of Property* ............................................. 15

15             *3. No Causal Link Between Direct Property Damage And Loss Of Income* .... 17

16        C.   Claims Do Not Fall Within The "Civil Authority" Insuring Agreement ........... 18

17             *1. The Orders Were Not Due To Direct Physical Loss* .................................... 18

18             *2. The Orders Did Not Prohibit Access To The Restaurants* ........................... 19

19        D.   Plaintiffs' Claims Are Also Excluded ................................................ 20

20        E.   FAC's Causes Of Action Fail As A Matter Of Law ......................................... 20

21   IV.  CONCLUSION ................................................................................. 20

22

23

24

25

26

27

28

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

## TABLE OF AUTHORITIES

Page

**Cases**

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996) ................................................................ 6

*Dickie Brennan & Co. v. Lexington Ins. Co.*
636 F.3d 683 (5th Cir. 2011) ............................................................. 19

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
896 F.2d 1542 (9th Cir. 1989) ............................................................ 6

*Love v. Fire Ins. Exchange*
221 Cal.App.3d 1136 (1990) ............................................................. 20

*Luna v. Kemira Specialty, Inc.*
575 F.Supp.2d 1166 (C.D. Cal. 2008) ................................................. 6

*Mama Jo's, Inc. v. Sparta Ins. Co.*
2018 WL3412974 (S.D. Fla. June 11, 2018) .............................. 16, 17

*Minkler v. Safeco Ins. Co. of Am.*
49 Cal.4th 315 (2010) ...................................................................... 11

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*
187 Cal.App.4th 766 (2010) ........................................................ 12, 13

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*
17 F.Supp.3d 323 (S.D.N.Y. 2014) ................................................... 13

*Northrup Grumman Corp. v. Factory Mut. Ins. Co.*
2013 WL 3946103 (C.D. Cal. July 31, 2013) ................................... 17

*Philadelphia Parking Authority v. Federal Ins. Co.*
385 F.Supp.2d 280 (S.D.N.Y. 2005) ............................ 14, 17, 19, 20

*Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*
465 F.3d 834 (8th Cir. 2006) ...................................... 15, 16, 19

*St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*
804 F.2d 520 (9th Cir. 1986) ............................................................ 11

*Syufy Enterprises v. Home Ins. Co. of Indiana*
1995 WL 129229 (N.D. Cal. March 21, 1995) .................................. 19

*Thompson v. Illinois Dept. of Professional Regulation*
300 F.3d 750 (7th Cir. 2002) .............................................................. 6

*United Air Lines, Inc. v. Insurance Co. of the State of Pennsylvania*
439 F.3d 128 (2d Cir. 2006) ......................................................... 18, 19

*Universal Image Productions, Inc. v. Federal Ins. Co.*
474 Fed.Appx.569 (6th Cir. 2012) .................................................... 17

*Waller v. Truck Ins. Exchange, Inc..*
11 Cal.4th 1 (1195) ............................................................................................ 11

**Rules of Civil Procedure**

Fed. R. Civ. Proc. 10(c) ...................................................................................... 6

Fed. R. Civ. Proc. 12(b) ...................................................................................... 6

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

## MOTION TO DISMISS

Please take notice that at the time and date above, defendant Oregon Mutual Insurance Company will move that the Court dismiss the Amended Complaint of plaintiffs Nari Suda, LLC and Pakin Corporation, for failure to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

Plaintiffs are two San Francisco restaurants whose business was economically affected by San Francisco's COVID-19 orders.  Plaintiffs, who had commercial property insurance policies issued by defendant Oregon Mutual Insurance Company ("OMI"), submitted claims seeking coverage for lost income caused by their compliance with the orders.

The OMI policies only cover loss of business income if a "Covered Cause of Loss" caused "direct physical loss or damage," which in turn caused a suspension of the insured's business operations, which caused the loss of income.  OMI denied plaintiffs' claims because their loss of income does not meet these contractual criteria.  In this diversity action, plaintiffs are now suing for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the California Unfair Competition Law (Calif. Bus. & Prof. Code § 17200 et seq.), and declaratory relief and reformation.

OMI requests dismissal of the Amended Complaint ("FAC") under Rule 12(b)(6) because plaintiffs' allegations show that their loss of income was not caused by distinct, demonstrable, physical alteration of property for coverage.  *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,* 187 Cal.App.4th 766 (2010); *Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d 834 (8th Cir. 2006).    Nor is there a causal link between physical damage and the loss of income.  *United Air Lines, Inc. v. Insurance Co. of the State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006); *Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683 (5th Cir. 2011); *Syufy Enterprises v. Home Ins. Co. of Indiana,* 1995 WL 129229 (N.D. Cal. March 21, 1995); *Northrup Grumman Corp. v. Factory Mut. Ins. Co*., 2013 WL 3946103 (C.D. Cal. July 31, 2013).

/ / /

/ / /

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### POINTS AND AUTHORITIES

**I.     RULE 12(b)(6)**

Defendant OMI filed a 12(b)(6) motion (Doc. 13) to dismiss plaintiffs' original Complaint.  In lieu of an opposition, plaintiffs filed the FAC (Doc. 16).  OMI now moves to dismiss the FAC.

Federal Rule of Civil Procedure Rule 12(b)(6) empowers the Court to dismiss a complaint that fails to state a claim upon which relief can be granted.[1]  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The court "need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations." *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1176 (C.D. Cal. 2008).

The complaint's exhibits are part of the pleading, and a court may consider them on a motion to dismiss.  Fed. R. Civ. Proc. 10(c);  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, n. 19 (9th Cir. 1989).  "[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)  In other words, "the exhibit trumps the allegations." *Id.*

**II.     MATERIAL ALLEGATIONS**

The following allegations are taken from the FAC, including its exhibits.  Plaintiff Nari Suda, LLC, doing business as Nari, and plaintiff Pakin Corporation, doing business as Kin Khao, are Thai restaurants ("Restaurants") located in San Francisco.  (Doc. 16, p. 3, ¶ 1.)

Plaintiffs explain that COVID-19 is an infectious disease caused by a coronavirus which has spread throughout California and which can spread via droplets expelled when an infected person coughs, exhales or sneezes.  (Doc. 16, pp. 6-8, ¶¶ 17-27.)

---

[1] This action is also the subject of pending motions to transfer under 28 USC § 1407 (MDL No. 2942).  OMI believes the pendency of those motions should not affect this motion to dismiss.

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Plaintiffs further claim that, in March 2020, the Restaurants were "forced to shut down" by order of the state and local governments. (Doc. 16, p. 3, ¶ 2.) According to the FAC, Plaintiffs' Restaurants reduced their operations as the result of three relevant orders:[2]

**Governor's Orders**: On March 12, 2020, Governor Newsom issued an executive order requiring California residents "to heed any order and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19." (Doc. 16, p. 9, ¶ 32.) Then on March 19, 2020, the Governor ordered all California residents to heed the order of the State Public Health Officer which required all residents to stay at home (with certain exceptions). The March 19th order repeatedly explained the reason it was issued was "to protect public health." (Doc. 16-5, pp. 2-3, ¶ 1.) The Governor's orders did not state, or even suggest, they were issued in any way due to actual or threatened property damage caused by the virus.

**San Francisco March 16 Order**: On March 16, 2020, the San Francisco Department of Public Health issued an order requiring all individuals in San Francisco to stay at home "except for certain essential activities," effective the following day, March 17. The March 16th San Francisco order directed restaurants to close, except that they could still provide takeout and delivery service. (Doc. 16, p. 9, ¶ 33.) The order defined restaurants as "Essential Businesses" (Doc. 16, p. 9, ¶ 33; Doc. 16-1, p. 8, § 10.f.xiii) and stated, "All Essential Businesses are ***strongly encouraged to remain open***" (Doc., 16-1, p. 4, § 3, emphasis added). And, "All businesses *... **except Essential Businesses*** ... are required to cease all activities…". (Doc. 16-1, p. 4, § 3, emphasis added.) The FAC refers to these two orders collectively as the "Orders." (Doc. 16, p. 9, ¶40.)

Importantly, San Francisco's March 16th order contained two sections explaining the reasons for its issuance. Section 6 stated: "This Order is issued based on evidence of increasing

---

[2] Although the Restaurants are located in the City and County of San Francisco and nowhere else, the FAC refers to orders and proclamations from other counties and even from other states. (Exh. 4, 6, 7, 8, 12 and 13 are orders or proclamations from Los Angeles and Sonoma counties and from the states of New York, New Jersey and Connecticut.) Clearly those foreign orders and proclamations are not relevant or controlling here, as plaintiffs were never subject to them, nor do plaintiffs so allege.

occurrence of COVID-19 within the County . . . and evidence that the age, condition and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19." (Doc. 16-1, pp. 3- 4, § 6.)  Section 7 of the order similarly stated: "This Order also is issued in light of the existence of 37 cases of COVID-19 in the County as well as at least 258 confirmed cases and at least three deaths in neighboring Bay Area counties, … including a significant and increasing number of suspected cases of community transmission and likely further significant increases in transmission."  Notably, Section 7 of the order closed by stating: "***This Order is necessary to slow the rate of spread [of the virus]*** …".  (Doc. 16-1, p. 5, § 7, emphasis added.)

As with the Governor's orders, San Francisco's March 16th order did not state, or even suggest, that it was issued in any way due to actual or threatened property damage caused by the virus.

**San Francisco March 31 Order**:  On March 31, 2020, the San Francisco Department of Public Health issued a superseding order, which continued to define restaurants as Essential Businesses and required they remain closed except for takeout and delivery service.  (Doc. 16, p. 10, ¶ 35.)  Like the March 16th order, San Francisco's March 31st order "strongly encouraged" Essential Businesses to remain open. (Doc. 16-2, p. 5, § 5.)  Travel was prohibited, except Essential Travel, which included going to restaurants.  (Doc. 16-2, p. 6, § 7 & p. 16, § 13.i.)  The Orders forced the Restaurants to close their dining rooms and prohibited customers from accessing and using the Restaurants' dining rooms – but did not prohibit access to the Restaurants as a whole.  (Doc. 16, p. 13, ¶¶ 47-48.) [3]

_____

[3]   Plaintiffs further allege that the Restaurants' employees "were prohibited from traveling to or accessing portions of the Restaurant utilized exclusively for preparing and serving dine in food, thereby prohibiting access to, use of, and operations at the Restaurants."  (Doc. 16, p. 13, ¶ 51.)  Plaintiffs also allege that their employees "were prohibited from working in close proximity to each other…."  (Doc. 16, pp. 13-14, ¶ 52.)  However, the Orders permitted employees to work in close proximity if necessary.  San Francisco's March 16th order required that "[t]o the greatest extent feasible," Essential Businesses were to maintain a six-foot distance between people and follow other isolating steps. (Doc. 16-1, p. 4, § 3 & p. 10, § 10.j.)  Under the March 31st order, individuals were required to strictly comply with social distancing requirements "except…as necessary to carry out the work of Essential Businesses…"  (Doc. 16-2, p. 17, § 13.k.)

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

As with the Governor's executive orders and the San Francisco March 16th order, this superseding order did not state, or even suggest, that it was issued due to actual or threatened property damage.  Indeed, the March 31st order explained it was issued for the exact same personal health reasons that were behind the issuance of the March 16th order.  (Doc. 16-2, pp. 6-7, §§ 8 and 9.)  Those reasons did not include any property damage at either the Restaurants or other premises.  On the contrary, like the March 16th order, the March 31st order stated: "***This Order is necessary to slow the rate of spread [of the virus]*** . . .".  (emphasis added.)  (*Id.*)

The FAC explains that, "[u]nder the Orders, the Restaurants were forced to close their dining rooms to the public . . ." and "were forced to suspend dine in food offerings at the Restaurants . . .".  (Doc. 16, p. 11, ¶¶ 46 & 47.)  Notably, the San Francisco March 16th Order required these actions effective as of 12:01 a.m. on March 17, 2020.  (Doc. 16-1, p. 9, § 12.)  Based on the suspension of plaintiffs' dine-in service which obviously began on that effective date of March 17, plaintiffs thereafter tendered their insurance claims to OMI the following week.  Nari Suda asserts that it submitted its business income claim on March 23, 2020 and Kin Khao asserts it similarly submitted its claim on March 24, 2020.  (Doc. 16, p. 18, ¶¶ 81 & 83.)  Plaintiffs further explain the claims were denied by letters from OMI dated April 1, 2020 (for Nari Suda) and April 16, 2020 (for Kin Khao).  (Doc. 16, p. 18, ¶¶ 82 & 84.)

## III.   RELEVANT POLICY PROVISIONS

OMI issued Businessowners Protector Policy No. BSP722439 to Nari Suda, and Businessowners Protector Policy No. BSP720113 to Kin Khao (collectively, "Policies").

---

Moreover, the Orders permitted customers to travel to and enter Essential Businesses.  (Doc. 16-1, p. 4, § 3 ["All Essential Businesses are strongly encouraged to remain open.  To the greatest extent feasible," customers need to observe social distancing guidelines]; Doc. 16-2, p. 5, § 5; p. 15, § 13.h [presuming that members of the public will visit Essential Businesses].)

Plaintiffs allege that because of the Orders, they lost access to the Restaurants and suspended operations, causing them to lose income.  (Doc. 16, p. 14, ¶¶ 53-54.)  Plaintiffs further allege that "Under the Orders, Kin Khao is not permitted to access or make any use of its kitchen."  (Doc. 16, p. 23, ¶ 112.)  Some employees were able to work at Nari.  Plaintiffs allege that "Under the Orders, Nari initially had no choice but to close its entire Restaurant, which did not previously include takeout or delivery orders."  Nari's employees then used its kitchen to try new takeout products, but the income was lower compared to the same period in 2019.  (Doc. 16, p. 24, ¶ 113.)

---

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

(Doc. 16, pp. 13-14, ¶¶ 56-58.)

Plaintiffs allege their claims are covered by the Policies' coverages for lost business income, including business income loss caused by action of civil authority.  (Doc. 16, p. 15, ¶¶ 61-65.)  In the Policies, these coverages are called Business Income; Extra Expense; and Civil Authority.  (Doc. 16-9, pp. 13-15; Doc. 16-10, pp. 6-8.)  All of these coverages are found as Additional Coverages in Section I-Property of the Businessowners Coverage Form.

The Policies provide as follows in relation to these coverages:

**f.   Business Income**

**(1) Business Income**

(a)  We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations"[4]  during the "period of restoration".[5]  The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….

….

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a)  The partial slowdown or complete cessation of your business activities; and

(b)  That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

….

**g.   Extra Expense**

(1)  We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….

….

(3)  With respect to the coverage provided in this Additional Coverage, suspension means:

(a)  The partial slowdown or complete cessation of your business activities; and

---

[4]  The Policies define "operations" as "your business activities occurring at the described premises."  (Doc. 16-9, p. 30; Doc. 16-10, p. 23.)

[5]  The "period of restoration" begins "(a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises."  (Doc. 16-9, p. 31; Doc. 16-10, p. 24.)

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

      (b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

….

**i.   Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

….

(Doc. 16-9, pp. 13-15; Doc. 16-10, pp. 6-8.)

All of these coverages require "direct physical loss of or damage to property", caused by or resulting from a "Covered Cause of Loss."  The Policies' Section I-Property defines Covered Cause of Loss as "[r]isks of direct physical loss unless the loss" is excluded or limited by the Policies' provisions. (Doc. 16-9, p. 10; Doc. 16-10, p. 3.)

## IV.   THE CLAIMS ARE NOT COVERED

### A.   Plaintiffs' Allegations Show There Is No Coverage

The Restaurants cannot meet the burden of proof to prevail on their insurance claims.  In this action, the interpretation and application of policy language is governed by California law. *St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*, 804 F.2d 520, 522 (9th Cir. 1986).  California law requires plaintiffs to establish that their claims are covered in the first instance.  *Minkler v. Safeco Ins. Co. of Am.,* 49 Cal.4th 315, 322 (2010).  Policy interpretation looks first at the contract's language to determine its plain meaning.  E.g., *Waller v. Truck Ins. Exchange, Inc.* 11 Cal.4th 1, 18 (1995).  The policy "must be interpreted as a whole, and in the circumstances of the case…"  *Id.*  When reading a policy, California law "will not strain to create an ambiguity where none exists."  *Id.* at pp. 18-19.

To overcome this motion, plaintiffs must show the losses are within basic coverage provided by the Policies' Business Income or Civil Authority Additional Coverages.  The insuring agreement for each of these coverages requires that the suspension of operations giving rise to the loss of income ***must be caused by "direct physical loss of or damage to property."***  Moreover, the physical loss or damage must itself be caused by a "Covered Cause of Loss."

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1  (See the following paragraphs in the Policies: f. Business Income (1) Business Income (a); f.

2  Business Income (2) Extended Business Income (b); g. Extra Expense (1); i. Civil Authority.

3  These paragraphs are quoted above and are found at Doc. 16-9, pp. 13-15 & Doc. 16-10, pp.

4  6-8.)  A "Covered Cause of Loss" is a risk of direct physical loss that is not excluded or limited

5  by Policy provisions.  (Doc. 16-9, p. 10; Doc. 16-10, p. 3.)

6       Because they cannot show that a "Covered Cause of Loss" caused direct physical loss or

7  damage which in turn caused a suspension of their business operations, the Restaurants have not

8  demonstrated their alleged economic harm falls within that basic grant of coverage.  Their

9  claims fail therefore as a matter of law.

10      **B.      Claims Do Not Fall Within The "Business Income" Insuring Agreement**

11           **1.   *No Direct Physical Loss Of Or Damage To Property At The Restaurants***

12      To trigger Business Income coverage, the Policies' insuring agreement requires that the

13  loss of business income must be caused by "direct physical loss of or damage to property" at the

14  Restaurants' own insured premises.  The Policies cannot provide coverage for the Restaurants'

15  economic losses here because they resulted from the issuance of governmental orders, not

16  because of direct physical damage at the Restaurants themselves.  Therefore, the claimed losses

17  are not covered under this clear language in the first instance.

18      The requirement of physical loss, given the ordinary definition of that term, is " 'widely

19  held to exclude alleged losses that are intangible or incorporeal, and, thereby to preclude any

20  claim against the property insurer when the insured merely suffers a detrimental economic

21  impact unaccompanied by a distinct, demonstrable, physical alteration of the property.' "  *MRI*

22  *Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,* 187 Cal.App.4th 766, 778-

23  779 (2010) [defining phrase "direct physical loss" in business property insurance policy].

24      In *MRI*, an MRI machine had been turned off and would not turn on again.  (187

25  Cal.App.4th at 770.)  The insured and its insurer disputed whether the machine had suffered

26  "direct physical loss".  (*Id*. at 769–770, 777–778.)  The appellate court held: "A direct physical

27  loss contemplates an actual change in insured property then in a satisfactory state, occasioned

28  by accident or other fortuitous event directly upon the property causing it to become

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    unsatisfactory for future use or requiring that repairs be made to make it so.... For loss to be

2    covered, there must be a distinct, demonstrable, physical alteration of the property." (*Id*. at 779,

3    citations and internal quotation marks omitted.)

4        The *MRI* Court further explained: "For there to be a 'loss' within the meaning of the

5    policy, some *external force* must have acted upon the insured property to cause a *physical*

6    *change* in the condition of the property, i.e., it must have been 'damaged' within the common

7    understanding of that term." 187 Cal.App.4th at 780, emph. in original.  In that case, the MRI

8    machine did not suffer any "actual physical 'damage' " by virtue of the fact that it was turned

9    off and could not be turned back on.  *Id.*

10       In another case, an insured lost income when it could not access its office because the

11   utility company shut off power in anticipation of Hurricane Sandy.  *Newman Myers Kreines*

12   *Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F.Supp.3d 323, 324-325 (S.D.N.Y. 2014).

13   Finding that the business interruption claim was not covered, the court explained, "The words

14   'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual,

15   demonstrable harm of some form to the premises itself, rather than forced closure of the

16   premises for reasons exogenous to the premises themselves, or the adverse business

17   consequences that flow from such closure."  *Id.* at 331.

18       Here, the FAC's allegations show that the facts giving rise to plaintiffs' claims do not

19   allege actual physical damage.  Nowhere have the Restaurants alleged in their FAC, or even

20   suggested, that they suspended their operations because of any actual physical loss or damage at

21   their San Francisco locations.  The Restaurants do not claim their premises were contaminated,

22   directly or indirectly, by any virus or infected person.  They do not claim that their dining rooms

23   or other facilities were closed because of actual physical contamination.  Nor do they claim that

24   they suspended operations due to any "direct physical loss of or damage to property" at their

25   dining or kitchen areas or in any other part of premises where the Restaurants operated before

26   operations were suspended.

27       Instead, the FAC repeatedly explains, clearly and unequivocally, that the reason for the

28   interruption of business was the Orders, not actual physical damage at their Restaurants.  The

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   Orders required the Restaurants to stop their in-house dining operations, while permitting

2   takeout and delivery service.  (Doc. 16, pp. 9-11, ¶¶ 33, 35, 36.)

3        Plaintiffs allege that "Under the Orders, the Restaurants were forced" to close their

4   dining rooms to the public, thereby prohibiting customers from accessing the Restaurants, and

5   preventing operations at the Restaurants.   (Doc. 16, p. 13, ¶¶ 46-48.)  The Restaurants also

6   allege that, "Under the Orders," social distancing guidelines prohibited customers from

7   accessing and using the Restaurants.  (Doc. 16, p. 13, ¶ 49.)  Notably, these allegations are

8   directly contradicted by the actual Orders, which direct Essential Businesses to explain to

9   customers how to observe social distancing guidelines while visiting the business.  (Doc. 16-1,

10  p. 4, § 3; Doc. 16-2, p. 15, § 13.h.)

11       The FAC also alleges, "Under the Orders, the Restaurants' employees were prohibited

12  from traveling to or accessing the Restaurant" to prepare and serve dine-in food, "thereby

13  prohibiting access to, use of, and operations at the Restaurants."  (Doc. 16, p. 13, ¶¶ 50-51.)

14  Again, "Under the Orders, the Restaurants' employees were prohibited from working in close

15  proximity to each other, thereby prohibiting access to, use of, and operations at the

16  Restaurants."  (Doc. 16, pp. 13-14, ¶ 52.)

17       Plaintiffs summarize their allegations:  "Under the Orders, both Restaurants lost access

18  to the Restaurants, lost use of the Restaurants, lost necessary use of necessary facilities at the

19  Restaurants, and suspended operations at the Restaurants."  (Doc. 16, p. 14, ¶ 53.)

20       Unquestionably, the Restaurants suspended their dining room operations as a result of

21  the governmental Orders.  The FAC's repeated use of the term "under the Orders" highlights

22  that the cause of the suspension of dining room operations was the Restaurants' compliance

23  with the Orders.  The Restaurants did not shutter their operations because of any physical

24  damage at their premises which, is a prerequisite to Business Income coverage being triggered

25  in the first instance.  The Restaurants' position here is akin to the insured in *Philadelphia*

26  *Parking Authority v. Federal Ins. Co.*, 385 F.Supp.2d 280 (S.D.N.Y. 2005).  There, the insured

27  lost business because the government shut down all flights after the September 11, 2001

28  terrorist attacks.  On a 12(b)(6) motion to dismiss, the court found there was no coverage for

1    lost income, because the business interruption was not caused by physical damage.  *Id.* at 287-

2    289.

3            The scope of the Orders also evidences the lack of connection to physical damage.  The

4    FAC alleges that the Orders were issued due to direct physical loss.  (Doc. 16, p. 12, ¶ 45.)  But

5    the Orders were directed at all businesses in San  Francisco, regardless of the presence or

6    absence of the virus at any particular establishment.  There were no exceptions if a business

7    could establish the virus was not present on its premises.  Nor did the Orders require that an

8    Essential Business, such as the Restaurants, should close down if the virus were detected there.

9    The actual presence of the virus at any particular location made no difference to the

10   implementation or effect of the Orders, and did not affect the Restaurants' loss of income.

11           Under the allegations of the FAC, there can be no question that the Restaurants did not

12   sustain any business income losses that fall within the Policies' insuring agreement.

13                       **2.  *No Physical Change In Condition Of Property***

14           In an attempt to manufacture coverage where none exists, the FAC mis-characterizes the

15   impact of the Orders in a conclusory fashion.  It argues that "[a]s a result of the Orders, physical

16   components of the Restaurants became unusable, damaged, and/or lost the ability to generate

17   income."  (Doc. 16, p. 15, ¶ 62.)  This sweeping generalization is not supported by the e FAC's

18   factual allegations.  Nowhere do the Restaurants raise any facts to show, or even to suggest, that

19   there actually was any such damage to physical components at the Restaurants.

20           While plaintiffs' ability to use and generate income from their property was allegedly

21   adversely affected by the Orders, such loss of use and resulting economic harm is not "direct

22   physical loss of or damage to" that property.  The FAC simply does not allege facts indicating

23   that an external force somehow operated to cause a covered physical change in the condition of

24   the Restaurant's property under the Policies' language and as articulated in *MRI*.

25           The Eighth Circuit dealt with a claim for loss of business income caused by a

26   governmental order in *Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d

27   834 (8th Cir. 2006).  The insured sold beef products; its sole source of beef was Canada.  When

28   a Canadian cow tested positive for mad cow disease, the government prohibited the importation

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

of beef from Canada.  *Id.* at 835.  The insured argued that it had suffered physical damage, because its beef product in Canada "was treated as though it were physically contaminated by mad cow disease and lost its function."  *Id.* at 836.  The court observed that characterizing the insured's inability to transport and sell the beef  "as direct physical loss to property would render the word 'physical' meaningless."  *Id.* at 838.

Plaintiffs may argue that the threat of potential harm from the coronavirus is sufficient to trigger coverage.  As background, the FAC sets out general information about the virus and the risks of COVID-19 infections from it.  (Doc. 16, p. 6, ¶¶ 17-18.)  However, none of those allegations suggests that the Restaurants' property was actually contaminated or otherwise physically damaged by the coronavirus or by anyone infected with COVID-19.

Similarly, the FAC does not assert that the Orders were issued as a result of any such actual contamination at the Restaurants' premises or at any other premises.  The potential that the virus could possibly contaminate physical property so as to actually damage it does not create coverage here.

Even if the Court were somehow to infer that the virus might have been present on objects at the Restaurants' premises, such presence would not constitute "direct physical loss of or damage to" their property in any event.  That is because the presence of the virus on objects does not mean those objects are themselves actually damaged.  Inanimate surfaces on which coronavirus land can easily be cleaned using simple disinfectants.  The FAC acknowledges this by incorporating an article from the *Journal of Hospital Infection* (Feb. 6, 2020) (Doc. 16, p. 7, fn. 10), which notes that coronaviruses "can be efficiently ***inactivated by surface disinfection*** procedures … ***within 1 minute.***"  (Emph. added.)  The virus can be quickly eliminated through disinfectant cleaning without resulting in damage to the objects on which they might land.

Caselaw shows that lost income due to cleaning of undamaged property is not covered under the Policies.  For example, in *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL3412974 (S.D. Fla. June 11, 2018), a restaurant's income was adversely affected by construction activities outside its own premises which required the business to clean up construction dust and debris. The court found that "cleaning is not considered to be direct physical loss."  *Id.* at *9.  The

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   business income loss claim was not covered because "there was no evidence that dust had an

2   impact on the operation other than requiring daily cleaning." *Id.*

3       Similarly, *Universal Image Productions, Inc. v. Federal Ins. Co.*, 474 Fed.Appx.569

4   (6th Cir. 2012) involved a claim for income that was lost when the insured business shut down

5   in order to clean mold and bacterial contamination inside the building's ventilation system.  The

6   court denied recovery for business income losses because there was no tangible damage to

7   physical property involved in cleaning the mold and bacteria, and therefore no "direct physical

8   loss" within the meaning of the policy.  *Id.* at 574.

9       Notably, loss of income cannot even be measured under the Policies without physical

10  loss or damage to property.  The Policies cover loss of income and extra expense incurred

11  during the "period of restoration."  The "period of restoration" begins "after the time of direct

12  physical loss or damage."  It ends when the property is "repaired, rebuilt or replaced."  (Doc.

13  16-9, pp. 13-15 & 30-31; Doc. 16-10, pp. 6-8 & 23-24.)  The terms "'rebuild,' 'repair' and

14  'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."

15  *Philadelphia Parking Authority,* 385 F.Supp.2d 280 at 287.   The FAC states no allegations

16  seeking damages based on restoration of property, and for good reason: there was no damaged

17  property to be restored so as to evoke coverage.  Here, the presence of the virus would not cause

18  physical damage or direct physical loss.  Moreover, the procedures to disinfect surfaces would

19  not correspond to the everyday meaning of "repair."

20          ***3.   No Causal Link Between Direct Property Damage And Loss Of Income***

21       The Business Income insuring clause states that the loss "***must be caused by*** direct

22  physical loss or damage to property . . ." (emphasis added).  This plainly means that there ***must***

23  ***be a causal link*** between the claimed loss and some actual insured property damage.  *Northrup*

24  *Grumman Corp. v. Factory Mut. Ins. Co.*, 2013 WL 3946103, *7 (C.D. Cal. July 31, 2013).

25       Here, even if the Restaurants' claims about the coronavirus were somehow deemed to

26  involve "direct physical loss of or damage" to property as that term is used in the Policies

27  (which OMI denies), such loss or damage did not cause the economic harm they are claiming.

28  On the contrary, their loss of business income was squarely the result of governmental orders.

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   Plaintiffs lost earnings by shutting down or limiting their operations in compliance with the

2   Orders – as the FAC repeatedly alleges, "under the Orders."  Because the loss of income was

3   not caused by any distinct, demonstrable physical alteration of property, it is not covered by the

4   Policies.

5       **C.     Claims Do Not Fall Within The "Civil Authority" Insuring Agreement**

6       The Policies' Civil Authority Coverage applies to loss of income that meets all of the

7   following criteria: caused by action of civil authority that prohibits access to the insured

8   premises; which action must be "due to direct physical loss of or damage to property, other than

9   at the described premises"; and which direct physical damage results from a Covered Cause of

10  Loss.  (Doc. 16-9, p. 15; Doc. 16-10, p. 8.)  Plaintiffs' claims do not meet these criteria, because

11  the Orders were not due to direct physical loss of or damage to property, and have not

12  prohibited access to the Restaurants.

13          *1.     The Orders Were Not Issued Due To Direct Physical Loss*

14      The Orders were intended to isolate individuals in order to prevent the spread of

15  COVID-19.  (Doc. 16-1, p. 2; p. 3, § 1; p. 4, § 6; Doc. 16-2, pp. 2-3; p. 5, § 2; pp. 7-8, §§ 11-

16  12.)  The Orders were not issued due to any direct physical loss to property.  As noted above,

17  the Governor's orders of March 12 and 19, as well as San Francisco's orders of March 16 and

18  31, specifically explained why they were issued.  Each order very clearly stated that it was

19  issued to protect the public's health from the spread of COVID-19.  Nowhere in any of those

20  orders did any government official state that they were issued due to some physical loss of or

21  damage to property, either at Plaintiffs' Restaurants or at other premises.  Therefore, Civil

22  Authority coverage does not apply to the Restaurants' claims.

23      Supporting this is *United Air Lines, Inc. v. Insurance Co. of the State of Pennsylvania*,

24  439 F.3d 128 (2d Cir. 2006), which considered an airline's claim for income loss caused by a

25  governmental order shutting down air traffic after the 9/11 attacks.  The court found the order

26  was not the direct result of property damage, but was "based on fears of future attacks."  *Id.* at

27  134.  Notably, the airport's reopening "had nothing to do with repairing, mitigating, or

28  responding to the damage caused by the attack..." *Id.* at 135.  Because the civil order was not

1   directly caused by physical damage, there was no business interruption coverage. *Id.*

2       Similarly, in *Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683 (5th Cir. 2011),

3   restaurateurs sought coverage for income lost in the wake of a mandatory evacuation order,

4   which was issued as a hurricane approached Louisiana. *Id.* at 684-685. The insureds argued

5   that the policy's requirement of physical damage was satisfied because the hurricane had

6   already damaged property in the Caribbean when the order was issued. *Id.* at 685. The court

7   held that because there was no evidence of any nexus between the order and physical damage in

8   the Caribbean or elsewhere, coverage was not available. *Id.*

9       In *Source Food*, the 8th Circuit found there was no Civil Authority coverage for the

10  same reason there was no Business Interruption coverage: there was no direct physical loss to

11  property. Treating a product as though it were physically contaminated, so that it effectively

12  lost its usefulness, did not constitute physical loss. *Source Food,* 465 F.3d at 837-838.

13              ### 2.   *The Orders Did Not Prohibit Access To The Restaurants*

14      The Orders did not prohibit access to the Restaurants. For that reason alone, Civil

15  Authority coverage is not available. This Court examined that point in *Syufy Enterprises v.*

16  *Home Ins. Co. of Indiana,* 1995 WL 129229 (N.D. Cal. March 21, 1995). Following the verdict

17  in the Rodney King trial, civil authorities imposed dusk-to-dawn curfews to quell potential

18  violence and looting. *Id.* at *1. Syufy closed its movie theaters during the curfew, and made a

19  claim for the resulting loss of business income. *Id.*

20      The policy in *Syufy* required that access to the insured premises be "specifically

21  prohibited" by civil authority. *Id.* Here, the Policies also require "action of civil authority that

22  prohibits access to the described premises." (Doc. 1-9, p. 15; Doc. 1-10, p. 8.) In *Syufy*, there

23  was no coverage because the curfew orders did not deny access to the insured theaters. 1995

24  WL 129229 at *2. Here, the Orders did not prohibit access to the Restaurants.

25      In another post-9/11 case, an airport parking operation made a claim for lost business

26  income caused by the order grounding all flights. *Philadelphia Parking Authority,* 385

27  F.Supp.2d 280. The court found there was no Civil Authority coverage because the order did

28  not prohibit access to the insured's garages. "While this unprecedented order may have

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to

2   Plaintiff's garages and therefore cannot be used to invoke coverage under Plaintiff's policy."  *Id.*

3   at 289.

4   **D.   Plaintiffs' Claims Are Also Excluded**

5   Even if plaintiffs had stated claims caused by actual physical damage to property,

6   coverage would be excluded by applicable exclusions in the Polices.  "Covered Cause of Loss"

7   is defined as "Risks of direct physical loss unless the loss is: [¶] **a.** Excluded in Paragraph B.

8   Exclusions in Section I…."  (Doc. 16-9, p. 10; Doc. 16-10, p. 3.)

9   The Policies exclude loss caused by "The enforcement of any ordinance or law: [¶] (a)

10  Regulating the construction, *use*, or repair *of any property*;…"  (Excl. 1.a., Doc. 16-9, p. 19;

11  Doc. 16-10, p. 12, emph. added.)  The Policies also exclude losses "caused by or resulting

12  from" "Acts or decisions, including the failure to act or decide, of any person, group,

13  organization or governmental body."  (Excl. 3.b., Doc. 16-9, p. 22;  Doc. 16-10, p. 15.)

14  As shown above, plaintiffs lost income because they complied with governmental orders

15  that regulated the use of the Restaurants.  Therefore, even if those losses were caused by

16  physical damage to property, they would nonetheless be excluded, not covered.

17  **E.   FAC's' Causes Of Action Fail As A Matter Of Law**

18  Because there is no coverage for the Restaurants' claims, each of the FAC's causes of

19  action fails as a matter of law.  The First Cause of Action for Breach of Contract fails because

20  OMI did not withhold any benefits due under the Policies. For the same reason, the Second

21  Cause of Action for Breach of Covenant of Good Faith and Fair Dealing also fails.  *Love v. Fire*

22  *Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1141.  The Third Cause of Action for Unfair

23  Business Practices depends upon the allegations of breach of contract and bad faith.  (Doc. 16,

24  p. 26, ¶¶ 123-124.)  Therefore, it is not viable either.  The Fourth Cause of Action for

25  Declaratory Relief depends upon the claim for breach of contract, and fails with it.

26  **IV.   CONCLUSION**

27  For the reasons stated above, defendant OMI requests the Court dismiss the FAC

28  without leave to amend, for failure to state a claim on which relief may be granted.

DATED:  June 29, 2020                    PACIFIC LAW PARTNERS, LLP

                                          By:    /s/ Andrew P. Collier
                                                 CLARKE B. HOLLAND
                                                 DAVID B.A. DEMO
                                                 ANDREW P. COLLIER
                                                 Attorneys for Defendant
                                                 OREGON MUTUAL INSURANCE COMPANY

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 – Facsimile (510) 841-7776